51 CCPA

**Application of James E. BURKE and Benjamin Michalko.**

**Patent Appeal No. 7138.**

United States Court of Customs and Patent Appeals.

June 4, 1964.

Louis C. Smith, J. Hart Evans, New York City (Francis M. Fazio, New York City, of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–7 in application serial No. 738,264, filed May 28, 1958, entitled "Stabilization of Shaped Acrylic Fabrics." No claims were allowed.

The invention is thus described in appellants' brief:

"The invention in issue relates to a novel method for dimensionally stabilizing shaped articles produced by the heat-stretching into three-dimensional form of thermoplastic textile fabrics made from synthetic acrylic fibers, i. e. fabrics having an acrylonitrile content of at least 35 per cent by weight.

\* \* \* \* \* \*

"Salient among the potential uses for such shaped textile articles is their use as articles of wearing apparel such as brassieres, foundation garments, and the like, wherein the three-dimensional shape imparted to the textile fabric is that required to conform with areas of body curvature.

\* \* \* \* \* \*

As described in the subject application \* \* \* the method of the invention involves bringing the shaped textile article into contact with a fluid form of water at a temperature substantially above the boiling point of water, and preferably between about 225°F. to about 260° F. During contact, the fabric is *restrained under tension sufficient to prevent shrinkage,* thereby assuring the retention of the shape imparted to the fabric by the shaping operation. In addition, the temperature of contact is necessarily below that at which fabric discoloration occurs, i. e. below about 300°F. (149°C.)" [Emphasis ours.]

Appellants say fabric shaping methods should provide against shrinkage, when the article is again subjected to heat as in laundering operations, "a minimal retention of at least about 80 per cent of the dimensions imparted by the shaping operation" and that their shaping method so provides.

Appellants' brief further says:

"Through the practice of the appellants' invention, the strains imposed during the shaping of the textile article and present to a varying extent in the multiplicity of interlocking fibers of which the article is composed are simultaneously and uniformly stabilized so that the three-dimensional shape initially imparted to the fabric is substantially

retained upon subsequent exposure to boiling water. The shaped textile articles thus treated also demonstrate satisfactory dimensional stability to dry heat even upon subsequent exposure to temperatures substantially above those at which stabilization was effected * * *. To this end, the use of water as the heating fluid has been found to be of advantage over the use of dry heat, which does not afford the same degree of stabilization under otherwise similar conditions."

Claim 1 is representative:

"A process for dimensionally stabilizing shaped articles prepared by the heat stretching to three-dimensional form of acrylic fabrics having an acrylonitrile content of at least about 35 per cent by weight, which process comprises heat-treating the shaped articles by bringing said articles into contact with a fluid form of water at a temperature of from about 225°F. to about 260°F., for a period of at least about one minute, *while restraining the fabric under a degree of tension sufficient to prevent shrinkage of the fabric during heat-treatment."* [Emphasis ours.]

The sole ground of rejection is unpatentability over the following references:

Carothers        2,157,116    May  9, 1939
Hampson et al. 2,679,450    May 25, 1954

Carothers teaches dimensionally stabilizing shaped *polyamide* articles such as men's socks by "boarding," a well-known procedure which involves placing fabric on a form, then subjecting it to heat treatment. The patentee carries out his heat treatment with a fluid form of water, e. g., steam, at a temperature of 100 to 150°C. (212 F. to 302 F.). The patent says:

"To prepare an elastic hose, threads or yarns must be used which can be set in a wavy shape by some process like boarding, and when so set the bent threads must tend to retain their shape with sufficient force to overcome the friction between the threads at all humidities encountered in wear.

*   *   *   *   *   *

"The synthetic polyamide products do not board satisfactorily under these conditions [i. e., conditions for boarding silk products] but in spite of the water insensitivity of the products, it has been found that they can be boarded satisfactorily by carrying out the operation at a higher temperature, preferably with the use of steam, e. g., superheated steam at 100–150°C."

Hampson et al. disclose a process for dimensionally stabilizing *acrylic filaments* by heat treatment in a fluid form of water at about 302 to 375°F. *while the filaments are under tension.* The patentees' heat treatment is but one step in making filaments from extrudable polymer composition. The patent says:

"In accordance with the present invention we produce filamentary material by extruding and solidifying by the removal of solvent an acetone solution of an acetone-soluble copolymer of vinylidene chloride and acrylonitrile containing 20–50% by weight of acrylonitrile, stretch the material by 300–2000% of its initial length while it is at a temperature above 120°C., *set the stretched material by heating it to 150°C. or higher while maintaining it under a tension sufficient to prevent shrinkage,* and then heat the set material to 150°C. or higher while allowing it to shrink freely or to a controlled degree." [Emphasis ours.]

The examiner rejected all claims as "unpatentable over Carothers in view of Hampson et al.," saying:

"It is held to be obvious and well within the skill of the art to apply to the heat setting of a fabric article [such as taught by Carothers] a procedure which is known to be operative to set the individual filaments thereof [taught by Hampson et al.]."

The board added:

"The setting effect of an elevated temperature, fluid water treatment on stretched acrylonitrile fibers is known in the art as is shown by Hampson et al. It is also known to heat set a fabric article by means of a steam treatment step as shown by Carothers. Hampson et al. set the acrylonitrile fibers while they are held in place under tension * * *.

"Hampson et al. recognize the effects of heat on acrylonitrile fibers. Selection of an optimum treating temperature to avoid fiber degradation and still obtain the desired stabilization would appear to be merely following the teachings of the reference and would not constitute [patentable] invention * * * [citations omitted]."

Appellants take the position that the combination of references is improper, framing the issue thus in their brief:

"The question involved in this case is whether a rejection on a combination of references can be sustained where (a) the references are mutually exclusive as to the type of material being treated (knit nylon hosiery vs. acrylonitrile-containing filaments), (b) the references are mutually exclusive as to the method employed (a boarding operation involving shrinkage vs. a filament-setting operation in which shrinkage is initially precluded), (c) neither reference is concerned with the type of material contemplated by the appellants, i. e. a shaped textile article produced by the heat-stretching into three-dimensional form of an acrylic fabric composed of a multiplicity of interlocking fibers and (d) neither reference, per se, suggests the combination thereof to one skilled in the art in order to obtain the appellants' results."

Appellants argue that "boarding" taught by Carothers is really a "shrinkage" operation and does not suggest appellants' process whereby fabrics are heated while "restraining the fabric * * * to prevent shrinkage * * * during heat-treatment"; that Hampson et al. stabilize filaments not fabrics, and do so at temperatures higher than appellants; and that it is not obvious "that the method for initially producing filamentary material can also be adapted to dimensionally stabilize * * shaped articles."

As to the propriety of combining references, we agree with the solicitor's brief which says:

"Appellants have launched an attack on the combination of references used in the rejection of the claims, but such attack disregards the manner in which the references were combined. Carothers seems to have been applied only to show that it is known to employ heat treatment for shaped fabric articles. Therefore, if there is any deficiency in the showing of Hampson et al. that the subject matter of the claims of appellants is obvious, Carothers supplies that deficiency.

"Carothers treats a common synthetic textile material, as do Hampson et al. The boarding treatment of Carothers is to set the shape of the textile material, as is also the heat treatment of Hampson et al. Therefore, it is obvious from Carothers that the heat treatment of Hampson et al. may be applied to a shaped fabric article. Since it is Hampson et al. who disclose the heat treatment process claimed by appellants, the Court may consider Hampson et al. as the primary reference, with Carothers teaching the heat treatment of a shaped fabric article. It has been held that the Court does not deem significant the order in which two references have been applied, In re Bush, 49 CCPA 752, 296 F.2d 491, 131 USPQ 263."

Notwithstanding appellants' arguments, we see no error in the board's decision. Although appellants point out that no "basis [has] been provided for assuming that process conditions utilized

for the production of *filaments* can also be adapted to dimensionally stabilize * * * shaped articles" (emphasis ours), we find such argument unpersuasive since, as pointed out in the solicitor's brief, "it should be obvious from the ordinary power of reasoning that fibers are so similar in a finished article to the same fibers in yarn that the fibers can be treated in the finished article as in the yarn * * *."[1]

Finally, we realize that the preferred temperature of heat treatment in appellants' process as recited in claims 1–6 is 225 to 260°F., which range is below that taught by Hampson et al., viz., "to 150°C." (302°F.). However, appellants' preferred temperatures appear to be based on the maximum temperature permissible while avoiding fiber discoloration.[2] We thus consider such temperatures obvious within the meaning of 35 U.S.C. § 103 since, as stated by the solicitor, "when it is known that high temperature and dry heat cause discoloration, it would only be sensible to lower the temperature and use wet heat." This kind of temperature selection seems as obvious to us as selecting the heat of a flatiron below that which scorches.

The decision of the board is affirmed.

Affirmed.

MARTIN, J., did not sit or participate in decision.

---

1. We realize, as pointed out in appellants' brief, that

   "It must be borne in mind here that the filaments of which the shaped article is composed are not in the same form or physical state that they were in by virtue of their production. Additional strains are imposed by the shaping operation and [are] present to a varying extent in the multiplicity of interlocking fibers making up the shaped article. The additional strains inherently make the shaped article more susceptible of shrinkage upon exposure to heat notwithstanding the fact that the fabric may be composed of conventionally set fibers."

   However, nothing of record convinces us that those skilled in the art would not find it obvious to employ similar conditions to stabilize acrylic *fibers* whether in *fabrics* or as *filaments* since the mechanism of stabilization appears to be no different.

2. Claim 7 says that heat treatment is effected "at a temperature of from about 225°F. up to that *temperature at which discoloration of the fabric occurs* * * *. Further, appellants' specification says:

   "The maximum temperature at which the process of the invention can be performed is determined by that temperature at which discoloration or other manifestation of undesirable change in fiber properties is noted."